Filed 9/21/22  P. v. Garcia CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAUL ROJO GARCIA,<br><br>    Defendant and Appellant. | D079178<br><br><br>(Super. Ct. No. SCN186475) |

APPEAL from an order of the Superior Court of San Diego County, Pamela M. Parker, Timothy M. Casserly, Judges.  Reversed and remanded with directions.

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Lynn G. McGinnis and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

Raul Rojo Garcia appeals an order denying a motion for reconsideration of his petition for relief from his second degree murder conviction under

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015; Senate Bill 1437), which amended Penal Code section 188 and former Penal Code section 1170.95 (now §1172.6).[1] Garcia contends the trial court erred by denying his petition and his reconsideration motion without appointing counsel and setting the matter for hearing on the prima facie issue of whether he is entitled to relief. The People agree that the court erred by failing to appoint counsel but contend the error was harmless because Garcia, who was the actual killer, is not eligible for relief as a matter of law. On the record available to us, we cannot conclude the error in failing to appoint counsel was harmless. Therefore, we reverse and remand the matter for further proceedings.

## BACKGROUND

A.     *Underlying Facts and Procedural History*[2]

On the afternoon of November 1, 2004, Garcia and his girlfriend, M.A., argued about their roommate's use of M.A.'s computer. The roommate testified she passed Garcia in the hallway as she was leaving the residence. She saw that he had retrieved a gun and was walking briskly toward the bedroom where M.A. was using the computer. (*Garcia I.*)

---

[1]     Undesignated statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was recodified without substantive change in section 1172.6, pursuant to Assembly Bill No. 200 (2021–2022 Reg. Sess.) (Assembly Bill No. 200). (See Stats. 2022, ch. 58, § 10.) We refer to the current codification throughout this opinion, unless otherwise indicated.

[2]     To provide context for the parties' arguments issues on appeal, we draw the facts from our unpublished opinion in *People v. Garcia* (Feb. 20, 2008, D047564) (*Garcia I*). However, neither we nor the trial court may engage in factfinding based on the appellate opinion at the prima facie stage. (*People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*); 1172.6, subd. (d)(3).)

A next door neighbor heard what sounded like a rock being thrown against a window and a cry for help.  The neighbor rushed outside and saw Garcia inside his apartment banging his bloodied hands on the bedroom window.  After calling 911, the neighbor went to Garcia's apartment and found him hunched over M.A. in the master bedroom.  The neighbor discovered a bullet hole in M.A.'s neck and helped Garcia get a towel to stop the blood flow.  Garcia was "very disturbed, excited" and "shaken up." (*Garcia I.*)  M.A. later died from her injuries from the gunshot wound.  (*Ibid.*)

Garcia told the police that he became irritated during an argument and "the gun went off."  He then noticed M.A. was hit in the neck.  (*Garcia I.*)  Garcia wrote a letter to M.A. in which he asked for her forgiveness and said he did not intend to hurt her.  The letter stated, " 'I can barely remember the whole incident, all I can remember is the pop of the gun, then the look on your face.  Your words will always haunt me.  "I am dying."  It was the only thing you said that I understood.  As I tried to stop the bleeding, all I could think of is that I am going to lose one of the best friends and someone I love with all my heart.  No matter what the scenario was, it will always be my own stupid ass fault.  I can't believe I allowed my anger to overrule my better judgment.' "  The letter continued, " 'I want to tell you what I remember happening, and see if you can tell me where I might have perceived it wrong. . . .  As we argued you started to pick up and move the item on the desk.  One of the items being the pistol that had been sitting there all morning.  As you picked it up, I grabbed it as well, that's when I am unsure what happened, somehow I accidentally put my finger on the trigger and the gun went off . . . .  I pray to the Lord you are okay and have a swift recovery.' "  (*Garcia I.*)

According to the roommate, Garcia always carried a gun with him and he tried to control every aspect of M.A.'s life. The roommate testified about prior incidents where Garcia pointed a gun either at M.A. or at the roommate in anger during arguments. (*Garcia I.*)

Garcia's defense at trial was that he did not intend to murder M.A., but that during a struggle for the gun, it went off, and accidentally killed her. (*Garcia I.*) The jury acquitted Garcia of first degree murder, but convicted him of murder in the second degree (§ 187, subd. (a)). The jury found true allegations that he personally used a firearm (§ 12022.53, subd. (b)) and that he intentionally and personally discharged a firearm that caused great bodily injury and death to M.A. (§ 12022.53, subds. (c) and (d).) The trial court sentenced him in November 2005 to a term of 40 years to life in prison based on 15 years to life for murder and 25 years to life for the section 12022.53, subdivision (d) enhancement.

B.    *Petition for Relief*

On January 29, 2021, Garcia filed a petition to vacate his conviction and resentence him under former section 1170.95 on the basis that under the Senate Bill 1437 amendments to section 188, subdivision (a)(3), malice for purposes of murder can no longer be imputed to a person based solely on his or her participation in a crime.

Garcia cited authorities regarding the second degree murder rule and the malice required under amended section 188. He identified several jury instructions given in his case, including instructions regarding murder, the definition of malice aforethought (including when malice may be implied), second degree murder, a portion of the involuntary manslaughter instruction regarding exhibiting a firearm, and the definition of "without due caution and circumspection." He also cited passages from the prosecutor's closing

arguments. He contended that the prosecutor's arguments invoked the second degree felony murder rule to imply malice for second degree murder based on negligence or accident. As a result, he believed his conviction should be vacated.

Garcia stated in his supporting declaration that he was convicted of second degree murder with a true finding on a firearm enhancement and his conviction should be vacated under the statutory amendments. He requested appointment of counsel to assist him with his petition.

On February 23, 2021, the trial court summarily denied Garcia's petition for resentencing and his request for counsel. The court stated Garcia was ineligible for relief under former section 1170.95 because Garcia was the actual killer who shot his girlfriend in the neck. From Garcia's petition and declaration alone, the court determined that the prosecution did not proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. Therefore, the court concluded the changes in the law did not apply to Garcia.

C.    *The People's Response*

About a month later, on March 19, 2021, the People submitted an initial response to Garcia's petition. The People took the position that Garcia was guilty of murder even with the changes made by Senate Bill 1437. However, it conceded "based upon the jury instructions given in this case, it appears that [Garcia] may be entitled to a hearing to determine whether he is entitled to relief."

D.    *Motion for Reconsideration*

Thereafter, Garcia filed a motion to reconsider the order denying his petition under former section 1170.95 in light of the People's response. Garcia also cited a recent case which held, for purposes of a prima facie

5

review, a true finding that a defendant personally discharged a firearm for purposes of section 12022.53, subdivision (d) did not establish the defendant acted with malice aforethought as a matter of law. (*People v. Offley* (2020) 48 Cal.App.5th 588, 592, 597 (*Offley*).)

The trial court summarily denied Garcia's motion for reconsideration on May 21, 2021.[3] The order stated Garcia's original petition and supporting exhibits "established that he was the actual and sole killer and was not an aider and abettor or conspirator in this case" and that he was not convicted under a felony murder or natural and probable consequence theory of liability. The court discussed the *Offley* case noting that the jury in that case also received an instruction "regarding the natural and probable consequences doctrine *in cases of conspiracy*." The trial court distinguished Garcia's case from *Offley* saying the jury here was not instructed on the theory of natural and probable consequences in the context of a conspiracy or aiding and abetting, but received proper instruction on second degree murder, which included a malice requirement.

The court commented that the People's initial response did not identify "any specific jury instruction(s) given in this case that they believe 'may' entitle [Garcia] to relief under [former] section 1170.95." The court acknowledged that the phrase "natural and probable consequences of the act" in jury instructions for implied malice and second degree murder was similar to the natural and probable consequences doctrine. However, the court believed the concepts are distinct and that the amendments under Senate Bill 1437 addressing the natural and probable consequences doctrine only referred to theories of vicarious liability.

---

3    A different judge ruled on the motion to reconsider after the retirement of the judge who denied Garcia's petition for resentencing.

6

Based on the face of the petition, the jury instructions given, and the verdict, the court determined that Garcia could not state a prima facie entitlement to relief because he was the sole and actual perpetrator and the jury found he committed murder with the required malice. Garcia appealed.

DISCUSSION

"[Senate Bill 1437] eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule. ([ ]§§ 188, subd. (a)(3), 189, subd. (e), as amended by Stats. 2018, ch. 1015, § 2, 3.)" ( *Lewis*, *supra*, 11 Cal.5th at p. 957.) Under the amendments to section 188, a principal in the crime of murder "shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

"Senate Bill 1437 also added [former] section 1170.95 . . . , which create[d] a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis*, *supra*, 11 Cal.5th at p. 957.) In *Lewis*, the Supreme Court analyzed the procedure required by former section 1170.95. Based upon the statutory language and legislative intent, the Supreme Court explained that petitioners who request counsel "are entitled to the appointment of counsel upon the filing of a facially sufficient petition . . . and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing' " of entitlement to relief. (*Id.* at pp. 957, 966.)

Effective January 1, 2022, Senate Bill No. 775 amended former section 1170.95, subdivision (a) to expand its coverage to individuals convicted of felony murder or murder "under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based

7

solely on that person's participated in a crime," as well as to those convicted of "attempted murder under the natural and probable consequences doctrine, or manslaughter." (Former § 1170.95, subd. (a), as amended by Stats. 2021, ch. 551, § 2.) As subsequently renumbered by Assembly Bill No. 200, all the provisions of former section 1170.95 were carried forward without change in section 1172.6. The People do not dispute that these amendments apply retroactively.

The parties agree that Garcia filed a facially sufficient petition in this case with a supporting declaration in which he requested counsel. Accordingly, he was entitled to appointment of counsel before the trial court considered whether his petition made a prima facie case. (*Lewis*, *supra*, 11 Cal.5th at p. 957; § 1172.6, subd. (b)(3).) "[P]etitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition." (*Lewis*, at p. 963.)

A trial court's erroneous failure to appoint counsel for a section 1172.6 petitioner is subject to harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Lewis*, *supra*, 11 Cal.5th at pp. 972–974.) On appeal, the petitioner has the burden of showing it is reasonably probable that if he or she had been afforded assistance of counsel, his or her petition would not have been summarily denied without an evidentiary hearing. (*Id.* at p. 974.)

Garcia contends that the court's error in reviewing portions of the record of conviction without appointing counsel was not harmless. Garcia's counsel posits that appointed counsel could have advanced at least two arguments that the jury instructions given allowed the jury to impute malice to Garcia based on his participation in a crime rather than finding the malice required for murder in the second degree.

First, in addition to receiving instructions regarding the requirements for murder, including first and second degree, the jury was given an instruction regarding involuntary manslaughter, which told the jury that "commission of an unlawful act, without due caution and circumspection would necessarily be an act that was dangerous to human life in its commission." (§ 192, subd. (b); CALJIC No. 8.45.)  The term "without due caution and circumspection," was defined as referring to "negligent acts which are aggravated, reckless and flagrant and which are such a departure from what would be the conduct of an ordinarily prudent, careful person under the same circumstances as to be in disregard for human life, or an indifference to the consequences of such acts." (CALJIC No. 8.46.)  The jury was also given instructions regarding the crime of exhibiting a firearm in a threatening manner.  (§ 417; CALJIC No. 16.290.)  Garcia's appellate counsel argues that appointed counsel could have briefed the issue of whether the instructions as a whole permitted the jury to find implied malice for purposes of second degree murder by simply finding that Garcia committed an unlawful act (exhibiting a firearm) that was "dangerous to human life" so long as the act was " 'deliberately performed with knowledge of the danger to, and with conscious disregard for human life.' "  In other words, appointed counsel may have been able to argue that the jurors could have imputed malice for second degree murder from a violation of section 417 committed without " 'due caution and circumspection.' "

Second, Garcia's appellate counsel argues that appointed counsel may have briefed the issue of whether the jury instructions allowed the jurors to impute or infer malice for purposes of second degree murder based on evidence of prior acts of domestic violence.

9

The People contend the trial court's error was harmless because Garcia was the actual killer and the jury was not instructed on aiding and abetting, felony murder, or any other form of vicarious liability. The People contend that as the actual killer he is categorically ineligible for relief under section 1172.6. In the People's view, Senate Bills 1437 and 775 were not intended to extend relief to situations where "liability was not derived from another person's actions or mens rea, but based on his own."

Garcia disagrees with the People's statutory interpretation and points to the plain language of sections 188 and 1172.6. Section 188, subdivision (a)(3) provides that malice "shall not be imputed to a person solely on his or her participation in a crime." Section 1172.6, subdivision (a) provides that a person convicted of murder under a "theory under which malice is imputed to a person based solely on that person's participation in a crime" may petition for relief. Garcia contends these statutes do not necessarily apply only to non-killers based on vicarious liability.

We need not and should not resolve these issues on the limited record before us. Nor do we express any view about the merits of Garcia's arguments in support of his petition. However, we conclude Garcia has met his burden of establishing that it is reasonably probable his petition would not have been summarily denied without a hearing if he had been afforded the assistance of counsel. He should have the opportunity for appointed counsel to consider and brief any issues for relief supported by the record of conviction.

## DISPOSITION

The order denying Garcia's motion for reconsideration of his petition for relief under former section 1170.95 is reversed. The matter is remanded with directions for the trial court to grant the motion for reconsideration, vacate the order summarily denying Garcia's petition for relief, appoint counsel as requested, and proceed with consideration of his petition as required by statute.

HUFFMAN, Acting P. J.

WE CONCUR:

DO, J.

BUCHANAN, J.